UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PAXFUL, INC.,

                              Plaintiff,

       -against-

ANDREI LUKKONEN,

                              Defendant.

-----------------------------------------------------------------X

21-CV-03330 (PGG)(SN)

**REPORT & RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE PAUL G. GARDEPHE:**

      Paxful, Inc. ("Paxful") sued Andrei Lukkonen, an Estonian former employee of its Estonian affiliate, to claw back "mistakenly made excessive profit share payments" of Paxful's net profits. Lukkonen moves to dismiss Paxful's complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, *forum non conveniens*, and failure to state a claim. I recommend that the Court grant Lukkonen's motion to dismiss because the Court lacks personal jurisdiction over Lukkonen. If the Court disagrees with my conclusion, I request that this matter be remanded to me for further consideration of Lukkonen's other arguments, including lack of subject matter jurisdiction, failure to state a claim, and *forum non conveniens*.

## BACKGROUND

      Paxful, Inc. is a cryptocurrency marketplace used to buy, sell, and transfer Bitcoin and other digital assets. ECF No. 1 (Compl.) ¶ 2. In 2016, Paxful and Lukkonen agreed that, as an employee of Paxful's Estonian affiliate, Lukkonen would receive profit share payments equal to 1% of Paxful's net profits for each fiscal year. Id. ¶ 15. Paxful made monthly profit share

payments to Lukkonen under this agreement using mainly Bitcoin and determined the monthly payment amount using "reasonable estimates" of its expected net profits. Id. ¶¶ 16-17. Paxful made many of the payments from its New York City-based Finance Department. Id. ¶ 18. Lukkonen allegedly had multiple calls and communications about the payments with Paxful employees who were in New York City. Id.

For three fiscal years, from January 2017 through December 2019, Paxful made a total of $254,786 in reasonably estimated profit share payments to Lukkonen. Id. ¶ 19. After conducting a financial audit, Paxful determined that its actual net profits during those three fiscal years were lower than it had estimated. Id. ¶ 20. As a result, Paxful's estimated profit share payments to Lukkonen exceeded the "true profit share payments" to which the agreement allegedly entitled him. Id. Paxful alleges that the total of the excess payments over the three fiscal years at issue was $130,871.43. Id. On November 5, 2020, Paxful notified Lukkonen that he had been "unjustly enriched at Paxful's expense" and demanded that he repay the excess amount he was paid by December 31, 2020. Id. ¶ 21. Lukkonen has not done so. Id. ¶ 22.

On April 15, 2021, Paxful brought this action against Lukkonen, asserting claims of unjust enrichment, payment by mistake, and money had and received.[1] After the parties conducted jurisdictional discovery, see ECF No. 27, Lukkonen moved to dismiss, see ECF No. 34, and Judge Gardephe referred the motion to me for a report and recommendation, see ECF No. 37.

---

[1] Paxful has brought largely identical actions against two other Central and Eastern European former employees. See Paxful, Inc. v. Strandberg, No. 21-cv-03331 (PGG)(SN); Paxful, Inc. v. Veremejenko, No. 21-cv-03332 (PGG)(SN). The Veremejenko parties recently settled, see 21-cv-03332 ECF Nos. 45, 50, and that case was closed. A motion to dismiss is pending in Strandberg.

DISCUSSION

Lukkonen moves to dismiss for (1) lack of personal jurisdiction, (2) lack of subject matter jurisdiction, (3) failure to state a claim, and (4) *forum non conveniens*.

I.    **Lack of Personal Jurisdiction**

Lukkonen claims that he does not have contacts with the state of New York sufficient to establish personal jurisdiction, and that the action must therefore be dismissed pursuant to Rule 12(b)(2). To support his claim, he has submitted a declaration stating that he has never conducted any business for Paxful in the United States but rather was employed at Paxful's Estonian affiliate. ECF No. 35 (Lukkonen Decl.) ¶ 4. At all times relevant to this case, he was an Estonian national and resident. Id. ¶ 7. In 2016, Lukkonen began receiving profit share payments at Paxful leadership's discretion. Id. ¶ 10. The payments were made using digital assets, like Bitcoin, and national currency to Lukkonen's Estonian bank account. Id. The only communication supporting Paxful's claim of personal jurisdiction, Lukkonen claims, is a four-page chat history screenshot from 2019 from a New York City-based Paxful employee asking for Lukkonen's bank and Bitcoin payment information and informing him of his profit share amount that month. Id. ¶ 5. He has never resided or performed services in the United States for Paxful. Id. ¶ 11. His only contact with New York—indeed, with the United States—is "occasional" messages from Paxful's New York office that informed him about the amount of the bonus payment that he would receive. Id. All the payments that he received from Paxful's Estonian affiliate were in connection with his employment and services provided in Estonia. Id.

A.    **Standard of Review**

On a 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. See Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35

(2d Cir. 2010). The court must "construe the pleadings and affidavits in the light most favorable to plaintiff[ ], resolving all doubts in [its] favor," see Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008), and must accept the allegations in the plaintiff's complaint "to the extent they are uncontroverted" by defendant affidavits, "which the district court may also consider," GlaxoSmithKline LLC v. Laclede, Inc., No. 18-cv-4945 (JMF), 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019). The court "will not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted). "Thus, '[t]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations . . . .'" NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (quoting Sullivan v. Jersey Strong Licensing LLC, No. 18-cv-7753 (RA), 2019 WL 3066492, at *2 (S.D.N.Y. July 12, 2019)) (alteration in NuMSP, LLC).

"[W]here jurisdictional discovery has been conducted—as here—a plaintiff's prima facie showing must be 'factually supported'; in other words, it must 'include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd., 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020), appeal withdrawn, No. 20-3081, 2021 WL 4190722 (2d Cir. Apr. 14, 2021) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)) (second alteration in Metro. Life).

Personal jurisdiction is analyzed using a two-step inquiry. First, the court determines whether the exercise of personal jurisdiction is proper under the laws of the forum state. If so, the Court then determines "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." Sonera Holding B.V. v.

4

Cukurova Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014). "In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state, here, . . . New York's long-arm statute, . . . so long as the district court's exercise of jurisdiction comports with the requirements of due process." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).

  B. **New York's Long-Arm Jurisdictional Statute**

  Plaintiff argues that Lukkonen's contacts with New York are sufficient to confer personal jurisdiction under N.Y. CPLR § 302, New York's long-arm statute, especially given that New York is Paxful's principal place of business, the place where Paxful earned the net profits at issue in this litigation, and the place where Paxful suffered damages.

  N.Y. CPLR § 302(a)(1) permits a court to exercise personal jurisdiction over an out-of-state party if that party "transacts any business within the state" and if the claim arises from these business contacts. CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). "To meet the transacting business element under N.Y. C.P.L.R. § 302(a)(1), it must be shown that a party 'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws . . . .'" D.H. Blair & Co., 462 F.3d at 104 (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999)) (alterations in Bank Brussels Lambert). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." Id. (citation omitted).

  Paxful argues that Lukkonen's physical presence in the state is not required for personal jurisdiction under CPLR § 302 because, "particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually

5

setting foot in the State." Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17 (1970). But Paxful overstates Lukkonen's contacts with New York, and its cited cases are unconvincing.

Physical presence is indeed not required for personal jurisdiction under CPLR § 302, but the non-resident defendant's contacts must nevertheless demonstrate that the defendant *transacted business* within the state. In Parke-Bernet, the defendant received and transmitted bids over an open telephone line, actively participated in an auction held in New York, and was "directly assisted in this activity" by a person physically present in the state, in effect "project[ing] himself into the auction room in order to compete with the other prospective purchasers who were there." 26 N.Y.2d at 17-18. In Carlson v. Cuevas, while the court acknowledged that phone calls to "actively participate in business in New York" may support a finding of New York long arm jurisdiction, the court noted that "it is the quality of the communications, not the quantity, which amounts to the requisite business activity." 932 F. Supp. 76, 78-79 (S.D.N.Y. 1996). The Carlson defendant made 12 phone calls and sent 12 other pieces of correspondence to an auction house in New York; she "neither purchased nor sold any services or goods in New York" but "merely advised a New York company of her claim to property in their possession," and was therefore not subject to New York jurisdiction. Id. at 79. The defendant in Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs. "entered New York to transact business here by knowingly initiating and pursuing a negotiation with [the plaintiff's] employee in New York that culminated in the sale of $15 million in bonds." 7 N.Y.3d 65, 71-72 (2006). And in Fischbarg v. Doucet, the defendants "purposeful[ly] attempt[ed] to establish an attorney-client relationship" in New York via "calls, faxes and e-mails that they projected into this state over many months." 9 N.Y.3d 375, 380 (2007). Again, "the *quality* of the defendants' New York contacts" was the court's primary consideration. Id. (emphasis added).

Despite having conducted jurisdictional discovery, Paxful fails to demonstrate that Lukkonen's contacts with New York were of sufficient quality to justify CPLR § 302 jurisdiction. Beyond alleging "multiple" calls, meetings, and electronic communications with New York City-based Paxful employees—which Lukkonen disputes—Paxful's argument seems to rest on the fact that *Paxful* earned the at-issue profits in New York, made the payments from New York, and suffered damages in New York. But the exercise of personal jurisdiction over a defendant does not depend on the plaintiff's conduct within the forum state.

The question is: did Lukkonen transact business in New York? Based on the parties' declarations and jurisdictional discovery, the answer is no. The only contact Lukkonen had with New York was responding to Paxful's messages asking for his bank and Bitcoin payment information so that he could be paid bonuses associated with the work that he performed in Estonia while working for Paxful's Estonian affiliate. This is not enough. See <u>DirecTV Latin Am., LLC v. Park 610, LLC</u>, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself.").

      **C.**    **Due Process Considerations**

In addition to meeting the statutory requirements to establish personal jurisdiction, Paxful must also show that the exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. The due process inquiry consists of two elements: the "minimum contacts" inquiry and the "reasonableness" inquiry. <u>Chloe v. Queen Bee of Beverly Hills, LLC</u>, 616 F.3d 158, 164 (2d Cir. 2010). Jurisdiction may be either "specific" or "general." See <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127-28 (2014). To establish the minimum contacts

necessary for specific jurisdiction, as Paxful seeks here, it must show that its claim arises out of or relates to Lukkonen's contacts with New York, that he purposefully availed himself of the privilege of doing business in New York, and that he could foresee being haled into court there. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002). If a court finds sufficient minimum contacts, it must undertake a reasonability analysis to ensure that "the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, . . . it is reasonable under the circumstances of the particular case." Metro. Life, 84 F.3d at 568 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Paxful fails to establish that Lukkonen purposefully availed himself in any way of the privilege of doing business in New York, or that he could foresee being haled into court there. Exercising personal jurisdiction over Lukkonen and requiring him to defend against a claim in New York would therefore offend traditional notions of fair play and substantial justice. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923-24 (2011).

## CONCLUSION

Because the Court lacks personal jurisdiction over Lukkonen, I recommend that the Court grant his motion to dismiss and close the case. Should the Court disagree with this recommendation, I request that the Court remand the matter to me for consideration of Lukkonen's other arguments.

DATED: June 21, 2022
          New York, New York

_____
SARAH NETBURN
United States Magistrate Judge

\*       \*       \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Gardephe. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).